**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BFT ADVISORS, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES LONG a/k/a/ JIM LONG, ) | |
| ) | Case No. 21-CV-10994-AK |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| BROWN-LONGPLEX, LLC; ) | |
| TIVERTON RECREATION, LLC; ) | |
| LONGPLEX, LLC; ) | |
| LONGPLEX II HOLDCO, LLC; and ) | |
| JLPH ACQUISITIONS CO., INC.; ) | |
| ) | |
| Reach and Apply Defendants. ) | |

**MEMORANDUM AND ORDER OF DISMISSAL**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

**A. KELLEY, D.J.**

Plaintiff BFT Advisors, LLC ("Plaintiff" or "BFT") asserts seven state and common law claims against Defendants James Long, a/k/a/ Jim Long ("Long"); and Brown-Longplex, LLC; Tiverton Recreation, LLC; Longplex, LLC; Longplex II Holdco, LLC; and JLPH Acquisitions Co., Inc., as Reach and Apply Defendants. Currently pending before the Court is a Motion to Dismiss filed by Long and three of the five named Reach and Apply Defendants: Tiverton Recreation, LLC; Longplex, LLC; and JLPH Acquisitions Co., Inc. (hereinafter, collectively, the "Moving Defendants"). [Dkt. 18 ("Defs.' Mot.")]. For the reasons set forth below, the Moving

1

Defendants' Motion to Dismiss is **GRANTED**, and the case is **DISMISSED** in its entirety for lack of subject matter jurisdiction.

## I.    FACTUAL & PROCEDURAL BACKGROUND

This case arises out of a contractual dispute between BFT, a finance and real estate consulting company [Dkt. 1 ("Compl.") at ¶ 1], and Defendant Long and associated Defendant entities, all stemming from BFT's investment in Long's companies and project of building a sports and entertainment complex in Tiverton, Rhode Island [id. at ¶¶ 12–15]. In July 2015, BFT alleges it and Long entered into a contract whereby BFT would be compensated for its consulting work and ability to raise capital for Long's project "primarily through a 10% interest in the future company the Defendant planned to form to hold the real estate and building in." [Id. at ¶¶ 14–15]. After a period of approximately two years where Plaintiff alleges Long was unable to pay various debts on time and the project became "financially distressed" [id. at ¶¶ 21–27], the parties continued to negotiate; and in May 2017, Plaintiff states it sold 5% of its interest in Long's company[1] back to Long in exchange for an amount payable over five years [id. at ¶ 27].

Nevertheless, BFT alleges that Long continued to fail to repay the various debts owed to Plaintiff, and that attempts at continued negotiations in the years following the parties' May 2017 agreement broke down, culminating in Plaintiff's repeated attempts to reach Long "without success." [Id. at ¶¶ 28–34]. BFT alleges that in 2019, Long's sports and entertainment complex "was reorganized with no payments made to the [Plaintiff] and with no communication at all,"

---

[1] The parties use various names to refer to the particular entity in which Plaintiff claims an interest. Plaintiff states it was "Longplex, LLC[,] which would later change its name to Tiverton Recreation, LLC" [Compl. at ¶ 20]. In contrast, the Moving Defendants claim "BFT formerly held an interest in Longplex, [LLC], not Tiverton Rec[reation, LLC]" [Dkt. 19 at 11, n. 6], yet still refer to the entity in question as Tiverton Recreation, LLC [see id. at 1–2], because, "for purposes of this motion, all the allegations are assumed as true" [id. at 11, n. 6]. Regardless of the entity's current or former name, however, this discrepancy has no bearing on the Court's findings.

and that BFT believes the complex "is now open, functioning," and using at least some of the assets BFT provided Long but for which it has not been repaid. [Id. at ¶¶ 35–36].

On the basis of the factual allegations outlined above, BFT filed suit against Defendant Long and entity Defendants Brown-Longplex, LLC; Tiverton Recreation, LLC; Longplex, LLC; Longplex II Holdco, LLC; and JLPH Acquisitions Co., Inc. (hereinafter, "Reach and Apply Defendants"[2]), naming all entity Defendants as "Reach and Apply Defendants." [Id.] BFT filed its complaint with this Court on June 15, 2021 and brings claims of conversion (Count I); breach of contract (Count II); fraudulent misrepresentation (Count III); unjust enrichment (Count IV); breach of the covenant of good faith and fair dealing (Count V); violation of Mass. Gen. Laws ch. 93A (Count VI); and a reach and apply action (Count VII). All claims are brought against Long individually except for Count VII, which is brought against the Reach and Apply Defendants. [Id.]

The Moving Defendants filed their Motion to Dismiss [Dkt. 18, Defs.' Mot.] on December 23, 2021, along with an accompanying memorandum of law [Dkt. 19, ("Defs.' Mem. Supp. Mot.")]. Following the Court's grant of an extension of time to respond [see Dkts. 21, 24], Plaintiff timely filed a brief in opposition to the motion to dismiss on January 20, 2022 [Dkt. 26 ("Pl.'s Opp'n")].

With regard to the two entity Defendants not joined in the filing of the present motion to dismiss, Brown-Longplex, LLC has not entered an appearance or filed any responsive pleading. Longplex II Holdco, LLC, which is represented by separate counsel than the Moving Defendants, filed an answer to Plaintiff's complaint on January 28, 2022. [Dkt. 29]. The

[2] These specific Defendants will be referred to as the "Reach and Apply Defendants" throughout this memorandum and order. However, that is not to say the Court agrees with each entity's classification as such (it does not). Rather, the term is used to distinguish these defendants from the defendant named as a party defendant, as well as from the subset of defendants who filed a motion to dismiss.

3

differing procedural posture for some Defendants has no bearing on the Court's ultimate finding that it does not have subject matter jurisdiction to hear this case; and as such, the Court need not engage with the non-Moving Defendants' actions or inaction in adjudicating this motion and issuing the present Order.

## II.   DISCUSSION

The Moving Defendants advance several arguments in support of their motion to dismiss, beginning with the assertion this Court lacks subject matter jurisdiction due to lack of complete diversity between the parties. [Dkt. 19, Defs.' Mem. Supp. Mot. at 5–8]. They also argue the Court lacks personal jurisdiction over certain entity Defendants [id. at 8–13], that Fed. R. Civ. P. 12(b)(6) requires dismissal due to a contractual agreement between the parties selecting Massachusetts state courts as the forum for any related litigation [id. at 13–14], and that Plaintiff has failed to plausibly state a claim as to Counts I, II, IV, and VII [id. at 14–23].

The Court "must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case." Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101–02 (1998)). Accordingly, because the Court finds it does not properly have subject matter jurisdiction over this action due to lack of complete diversity between the parties, as discussed below, the Court need not and does not delve into the Moving Defendants' remaining arguments in support of dismissal.

### a.  Federal Diversity Jurisdiction

Federal courts are of limited jurisdiction and may generally only adjudicate civil actions arising under federal laws, see 28 U.S.C. § 1331, and those where parties have complete

diversity of state citizenship and the amount in controversy exceeds $75,000, see id. § 1332. "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress," Esquilín–Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011); see also CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (describing federal courts' "responsibility to police the border of federal jurisdiction").

The party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). When a Defendant has moved for dismissal based on lack of subject matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Kersey v. Prudential Ins. Agency, LLC, No. 15-CV-14186-GAO, 2017 WL 5162006, at *6 (D. Mass. Feb. 3, 2017) (quoting Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (quotations and citations omitted)). Moreover, "it is black-letter law that jurisdiction must be apparent from the face of the plaintiffs' pleading." Id. (quoting PCS 2000 LP v. Romulus Telecomms., Inc., 148 F.3d 32, 35 (1st Cir. 1998)).

"[D]iversity jurisdiction requires complete diversity of citizenship as between all plaintiffs and all defendants." Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008). When parties include limited liability companies, the citizenship of such an entity "is determined by the citizenship of all of its members." D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011) (citation omitted). Finally, claims of federal subject

matter jurisdiction must be "plausible on [their] face," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), pursuant to federal pleading requirements.

In Plaintiff's Complaint [Dkt. 1, Compl.], BFT fails to adequately allege diversity jurisdiction pursuant to the standards set by, inter alia, D.B. Zwirn, 661 F.3d at 125 and Kersey, 2017 WL 5162006, at *6. Not only does BFT fail to plead facts pertaining to the identity, number, and citizenship of its own members, instead offering only its state of incorporation and "usual place of business" [id. at ¶ 1], but it similarly fails to do so for all entity Defendants, pleading simply that each entity's state of incorporation and place of business makes them Rhode Island limited liability companies [id. at ¶¶ 3–7]. Moreover, Plaintiff does not properly plead allegations regarding the citizenship of Defendant Long, providing a Rhode Island address at which it claims he "resid[es]," but making no allegation as to where he is domiciled [id. ¶ 2], as is required for pleading party citizenship, see Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992); Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008).

Nevertheless, the Moving Defendants' memorandum in support of their motion to dismiss provides relevant information regarding the membership of two of the LLC entity Defendants, indicating these entities are, in fact, Massachusetts citizens for the purposes of diversity jurisdiction. [Defs.' Mem. Supp. Mot. at 7–8]. The Moving Defendants state that Longplex, LLC and Longplex II Holdco, LLC have as members a Massachusetts incorporated entity and an individual domiciled in Massachusetts, respectively [id.], making both LLCs Massachusetts citizens for the purposes of diversity jurisdiction. See D.B. Zwirn, 661 F.3d at 125. Despite Plaintiff's failure to properly plead diversity jurisdiction with regard to all of its own members, on the face of its pleading it clearly claims to be a Massachusetts citizen [Compl.

at ¶ 1].[3] Moreover, despite the existence of dispute between the parties as to BFT's ownership

stake in one of the Defendant entities, the very fact that BFT pleads an ownership interest in one

of these entities [see Compl. at ¶¶ 14, 19–20, 27, 29] similarly puts at least one of the Defendant

LLCs as a Massachusetts citizen on the face of the pleading. [See also Defs.' Mem. Supp. Mot.

at 8, n. 4 (noting "it is a practical impossibility to have complete diversity according to BFT's

own allegations," by virtue of BFT's claimed ownership in one of the Defendant LLCs, thus

putting itself "on both sides of the 'versus': as a plaintiff and [as a] member" of one of the

Defendant entities)].  As such, there does not exist complete diversity between the parties, as

Plaintiff and at least two Defendants are Massachusetts citizens. See, e.g., Connectu LLC, 522

F.3d at 91.


### b.  The Reach and Apply Defendants

Notwithstanding the facts and pleadings regarding party citizenship discussed above, the

Court now turns to the question of whether the Reach and Apply Defendants are properly named

as such, which would exempt consideration of their citizenship for the purposes of establishing

diversity jurisdiction. "Early in its history, [the Supreme Court] established that the 'citizens'

upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the

controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction

---

[3] While the Court must of course accept all factual allegations in the complaint as true at the stage of a motion to
dismiss, see García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013), Defendants correctly point out that
this Court may take judicial notice of LLC entity Defendants' members' states of incorporation pursuant to Fed. R.
Evid. 201(b), as such information is readily and publicly available as filed with the Massachusetts Secretary of State
[see Defs.' Mem. Supp. Mot. at 7, n. 3]. Moreover, Plaintiff does not directly contest that Longplex, LLC and
Longplex Holdco II, LLC are Massachusetts citizens or offer any concrete reason to question the Moving
Defendants' characterization of their citizenship [Pl's Opp'n at 3], nor did it file for leave to amend its inadequate
pleading with regard to diversity of citizenship. Consequently, despite Plaintiff's pleading stating that each entity
Defendant is simply a Rhode Island company and citizen, the Court accepts Defendants' assertion that Longplex,
LLC and Longplex Holdco II, LLC are Massachusetts citizens for the purposes of diversity jurisdiction.

only upon the citizenship of *real parties to the controversy*." <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458, 460–61 (1980) (emphasis added) (internal citations omitted). Parties cannot properly obtain diversity jurisdiction in federal courts simply by their "own determination of who are plaintiffs and who defendants," and it is the duty of such courts "to look beyond the pleadings and arrange the parties according to their sides in the dispute." <u>Indianapolis v. Chase Nat. Bank, Trustee, et. al.</u>, 314 U.S. 63, 69 (1941) (internal quotations and citations omitted).

Accordingly, this Court must determine whether the Reach and Apply Defendants comprise "real parties to the controversy," <u>see</u> <u>Navarro</u>, 446 U.S. at 460–61, or, instead, are mere "nominal" parties with "no real interest in the result of the suit, or no actual interest or control over the subject matter of the litigation, but [are] solely joined because a technical rule of practice requires their presence in the record," *Nominal party*, Wex Legal Dictionary (2020).

The seminal Supreme Court case opining on proper categorization of nominal parties versus real parties to the controversy held that the parties at issue there could not be found to be nominal, based on the fact they held "legal title, [] manage[d] the assets, [and] control[led] the litigation." <u>Navarro</u>, 446 U.S. at 465. More recent First Circuit precedent and cases within this District have followed and expanded on this reasoning. <u>See</u> <u>Gabriel v. Preble</u>, 396 F.3d 10 (1st Cir. 2005) (holding a corporation was properly aligned as a party defendant in shareholder derivative action, despite presumption of corporations being plaintiffs in such actions, due to corporation's and its management's hostility to the lawsuit); <u>Bishay v. Am. Arb. Assoc.</u>, 221 F. App'x 3, (1st Cir. 2007) (holding that, in civil action against arbitration association by one party to the underlying arbitrated dispute, the other party to that underlying dispute was not a nominal one whose citizenship could be disregarded vis-à-vis diversity jurisdiction); <u>Law Offices of Jeffrey S. Glassman v. Palmisciano</u>, 690 F. Supp. 2d 5, (D. Mass. 2009) (naming insurance

company as reach and apply defendant where company had underwritten policy of alleged

tortfeasor in matter that eventually gave rise to litigation between law firms over settlement

funds).

It is very difficult to find on the facts alleged here that the Reach and Apply Defendants

are truly "nominal" under these standards. Firstly, as per BFT's Complaint, one of the named

Reach and Apply Defendants was formed "to hold the real estate and [sports complex] building

in," and this is the very same Defendant entity in which BFT claims an ownership interest.

[Compl. at ¶¶ 14, 20]. Accordingly, on Plaintiff's own facts, that entity holds title to at least

some of the assets at issue, which speaks to the standard set by Navarro, 446 U.S. at 465.

Relatedly, in the pleading of its reach and apply claim (Count VII, [Compl. at ¶¶ 106–15]), BFT

asserts "the Reach and Apply Defendants are owned in full *or in part* by the Defendant, James

Long" [id. at ¶ 107] before detailing the injunctive relief and/or final judgment sought against

them. The acknowledgment that these entities may well have other interested member-owners

(including, as pleaded, Plaintiff itself), combined with the extraordinary injunctive relief sought

by Plaintiff(s) on this count, further indicates the entity Defendants do in fact have a real,

substantial interest in the outcome of this matter.

Moreover, in line with the law applied in Gabriel, 396 F.3d at 14, regarding hostility to

litigation, the Court's lack of subject matter jurisdiction is evident here. While one of the LLC

Reach and Apply Defendants has yet to file an appearance or responsive pleading, three of these

Defendants joined Defendant Long in filing the Motion to Dismiss [Dkt. 18, Defs.' Mot.], and

the fifth has filed an answer in oppositional response to Plaintiff's complaint [Dkt. 29].

Regardless of the lack of appearance by one of the five Reach and Apply LLC Defendants,

overall opposition to the instant lawsuit is strong, and the myriad of reasons supporting dismissal

due to these entities' misclassification as reach and apply defendants remain undisturbed by Brown-Longplex, LLC's failure to appear.

Plaintiff cites only three authorities in support of its argument that this Court has subject matter jurisdiction. [Dkt. 26, Pl.'s Opp'n at 3–4]. The first, Bacon v. Rives, 106 U.S. 99 (1882), is from over a century ago. Nevertheless, as the Seventh Circuit explained in a somewhat more recent case addressing Bacon (and also cited in Plaintiff's opposition filing), the plaintiff there had "named as additional defendants persons who were in effect garnishees," and "[t]he addition to a lawsuit of a purely nominal party—the holder of the stakes of the dispute between the plaintiff and the original defendant—does not affect diversity jurisdiction." Matchett v. Wold, 818 F.2d 574, 576 (7th Cir. 1987) (citing Bacon, 106 U.S. at 99). The very corporate entities holding much or all of the real estate, equipment, and other assets at issue in this matter, especially where many appear to have been at least initially formed by Defendant Long, but may now have multiple other owners, cannot possibly be characterized as mere "holder[s] of the stakes," id., while a wholly separate Plaintiff and Defendant litigate.

While this Court expressly does not reach the issue of whether Plaintiff has plausibly stated a claim pursuant to Fed. R. Civ. P. 12(b)(6), examination of Plaintiff's reach and apply claim and the relevant governing law is illuminating with regard to whether the Reach and Apply Defendants are properly categorized as such. "Massachusetts law allows two types of reach and apply claims, a common law claim… and a statutory claim made pursuant to Mass. Gen. Laws ch. 214, § 3(6)." In re Wojtkun, 534 B.R. 435, 457 (Bankr. D. Mass. 2015). Aside from some minor exceptions, such as "where a judgment and execution would be of no practical utility," the common law reach and apply claim "requires a judgment." Id. at 458 (citing Hunter v. Youthstream Media Networks, Inc., 241 F. Supp. 2d 52, 55 (D. Mass. 2002)) (internal quotations

and citations omitted). "Massachusetts courts treat the common law claim as a civil action, not merely a remedy." Id. In contrast, the statutory claim available pursuant to Mass. Gen. Laws ch. 214, § 3(6) requires that a plaintiff "establish only that a debt is owed to it by the defendant and that the defendant has property that is 'incapable of attachment or of taking on execution in a legal action.'" In re Wojtkun, 534 B.R. at 458 (quoting Hunter, 241 F. Supp. 2d at 57–58).

BFT's pleading of their reach and apply claim (Count VII, [Compl. at ¶¶ 106–15]) is not entirely clear with regard to which type of reach and apply claim it seeks to bring. Plaintiff does not mention the statute governing the statutory reach and apply claim, Mass. Gen. Laws ch. 214, § 3(6), and thus would appear to be attempting to bring the common law claim. Yet nowhere in the portion of its Complaint pleading the reach and apply action [Compl. at ¶¶ 106–15] does BFT claim it has a judgment against any one of the Defendants—in fact, it is plainly evident from the facts pled throughout its Complaint that it does not (this is, after all, what it seeks here). As such, without wading into full deliberation of whether BFT has properly stated a claim for the reach and apply action, the Court finds that the absence of this key prerequisite when bringing such an action is telling as to whether the Reach and Apply Defendants are properly named as such, while also providing further support for their correct status to be that of party defendants.

Finally, the Court notes the prudence of adhering to strict definitional standards as discussed above when determining whether a defendant may properly be categorized as nominal or reach and apply for the purposes of diversity jurisdiction. Erosion of such standards would open the door to the creation of perverse incentives for litigants by allowing parties to evade the plethora of statutes, rules, and precedent governing federal courts' subject matter jurisdiction with the mere addition or absence of three words to a case caption. Particularly where there exist strong, meaningful constitutional and statutory limitations on the subject matter jurisdiction

11

conferred on federal courts, as well as the courts' continuous duty to ensure the existence of such jurisdiction, see Kokkonen, 511 U.S. at 377; Fafel, 399 F.3d at 410; Esquilín–Mendoza, 638 F.3d at 3, there is significant import in ensuring these limitations are not heedlessly weakened, and that the Court's duty in this regard is upheld.

### III.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss [Dkt. 18] and orders that this action be **DISMISSED** in its entirety for lack of subject matter jurisdiction.

**SO ORDERED.**

June 3, 2022                                          /s/ Angel Kelley
                                                     ANGEL KELLEY
                                                     U.S. DISTRICT JUDGE